IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THE HUNTINGTON NATIONAL BANK,
a national banking association,

    Plaintiff,

v.                                                 Civil Action No. 1:10CV135
                                                            (STAMP)

ALLEN G. SAOUD, JENNIFER E. SAOUD,
AGS DEVELOPMENT, LLC,
a West Virginia limited liability company,
AGS USED CARS, LLC,
a West Virginia limited liability company,
CHIRODERM, LLC,
a West Virginia limited liability company,
FAIRMONT HOMES, LLC,
a West Virginia limited liability company,
JAB SPA ENTERPRISES, LLC,
a West Virginia limited liability company,
PRIME SPACE, LLC,
a West Virginia limited liability company,
and TITANIUM PROPERTIES, LLC,
a West Virginia limited liability company,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
THE PLAINTIFF'S MOTION TO DISMISS
THE DEFENDANTS' COUNTERCLAIMS**

I. Procedural History

The plaintiff, The Huntington National Bank ("Huntington"), filed a complaint in this Court against the defendants for alleged loan deficiencies arising out of the defendants' alleged default on a promissory note in the principal sum of $7 million. The defendants filed a two count counterclaim, in which they allege breach of contract and breach of duty of good faith and fair dealing and tortious interference with business activities. The plaintiff then filed a motion to dismiss the counterclaims to which

the defendants responded and the plaintiff replied. For the reasons set forth below, the plaintiff's motion to dismiss the counterclaim is granted in part and denied in part.

## II. Facts[1]

On August 22, 2007, the defendants entered into a commercial loan transaction with Huntington, borrowing $7 million and agreeing to repay the debt in accordance with the terms set forth in a promissory note. The note was secured by Assignment of Huntington Investment Company Asset Management Account. The defendants allegedly defaulted on financial and reporting conditions and covenants in the loan documents associated with the note and, on July 17, 2009, Huntington caused demand letters to be mailed to the defendants, demanding payment in full. The defendants claim in their counterclaim that this constituted a breach of the contract. On July 6, 2010, Huntington again caused demand letters to be mailed to the defendants, demanding payment in full upon expiration of a six month forbearance period. The defendants again contend that this was a breach of contract by the plaintiffs. The defendants allegedly have not yet paid the debt. On August 20, 2010, Huntington sent defense counsel notice of Huntington's intention to liquidate its interest in the Account on August 25, 2010 unless an acceptable workout plan could be reached. On August

---

[1] In accordance with the applicable standard of review, stated below concerning a motion to dismiss, this Court will accept, for the purposes of deciding this motion, the factual allegations contained in the counterclaim as true.

27, 2010, Huntington sent the defendants a notice of disposition of collateral notifying them that Huntington intended to liquidate its interest in the account on August 30, 2010. The defendants still owe $6,083,228.23 on the note along with $12,709.93 in interest. Liquidation of the account yield $5,412,187.84. Huntington contends it is entitled to have judgment against the defendants in the amount of $683,750.33 together with interest of $23.74133 per day.

### III. Applicable Law

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept all well-pled facts contained in the counterclaim as true. Marfork Coal Co. v. Smith, 2011 WL 744727 (S.D. W. Va. Feb. 23, 2011). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc, 591 F.3d 250, 255 (4th Cir. 2009) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). This Court also declines to consider "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009).

It has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5B Charles Alan Wright

& Arthur R. Miller, Federal Practice and Procedure § 1356 (3d ed. 1998). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. Id. For purposes of the motion to dismiss, the complaint, or, in this case, the counterclaim, is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). Id. § 1357.

A counterclaim should be dismissed if it does not "'state a claim to relief that is plausible on is face.'" Marfork Coal Co., 2011 WL 744727 (quoting Iqbal, 129 S. Ct. at 1949). "Facial plausibility is established once the factual content of a complaint [or counterclaim] 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Nemet Chevrolet, 591 F.3d at 256 (quoting Iqbal, 129 S. Ct. at 1949). Detailed factual allegations are not required, but the facts alleged must be sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## IV. Discussion

A. Breach of Contract and Breach of Duty of Good Faith and Fair Dealing

In their counterclaim, the defendants allege that at all times from August 2007 up to and including August 2010, the defendants

4

made all payments upon the $7 million loan in a timely manner. Additionally, the defendants contend that at all times between August 2007 and August 2010, the defendants provided the plaintiff with financial and operating statements on an annual basis similar in form and substance to those established by past practice and custom between the plaintiff and the defendants. They also allege that during this time period, the defendants kept and maintained books and records of account in the same fashion as had been established by the past practice and custom of the plaintiff and the defendants and which had been deemed satisfactory by the plaintiff in connection with various loan closings.

The defendants allege that the plaintiff breached its contract with the defendants on July 17, 2009 when it sent the notice of default stating that the defendants failed "to observe the financial and reporting conditions and covenants contained in the loan documents executed in connection with said transactions" and declared all sums due and payable. In West Virginia, a covenant of good faith and fair dealing is implied in every contract for the purpose of evaluating a party's performance of that contract.[2] Knapp v. American General Finance, Inc., 111 F. Supp. 2d 758, 767 (S.D. W. Va. 2000); Hoffmaster v. Guiffrida, 630 F. Supp. 1289, 1290-91 (S.D. W. Va. 1986). West Virginia law does not recognize

---

[2]Under West Virginia law, "good faith" is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing." W. Va. Code § 46-1-201(b)(20); see also Fifth Third Bank v. McClure Properties, Inc., 724 F. Supp. 2d 598, 609 (S.D. W. Va. 2010).

5

an independent cause of action for a breach of duty of good faith and fair dealing separate and apart from a breach of contract claim. Stand Energy Corp. v. Columbia Gas Transmission Corp., 373 F. Supp. 2d 631, 644 (S.D. W. Va. 2005); Highmark West Virginia Inc. v. Jamie, 655 S.E.2d 509, 514 (W. Va. 2007).

The plaintiff contends that this counterclaim fails because the plaintiff's actions were authorized expressly by the contractual agreements between the parties. Under West Virginia law, creditors have the express right to foreclose without having to consider any alternatives. Lucas v. Fairbanks Capital Corp., 618 S.E.2d 488, 490 (W. Va. 2005). In the complaint, the plaintiff states that the note for $7 million was secured by an assignment, which the plaintiff attached to the complaint. The promissory note states that "[t]his Note is also secured by an assignment of the Huntington Asset Management Account of Allen G. Saoud and Jennifer E. Saoud." The assignment states that it is "collateral for Note in the amount of $7,000,000.00 executed this day. It is understood that Allen G. Saoud shall maintain a minimum balance of $7,000,000.00 in this account at all times." The plaintiff states that it declared default based on the defendants' failure to maintain adequate records and their failure to maintain adequate collateral.

In their response to the motion to dismiss, the defendants state that the failure to maintain $7 million in the account is not specifically referenced as a grounds for default in the loan

agreement. The defendants believe that the plaintiff breached its obligation to act in good faith and to deal fairly with the defendants by failing to take additional collateral and to continue to allow the defendants to make payments on the $7 million note. The defendants also argue that, even if default were proper, the plaintiff did not provide commercially reasonable notice of disposition of collateral when it sold the collateral three days after sending the notice of disposition of collateral.

In reply, the plaintiff argues that it had no duty to negotiate with the defendants for modification and that the disposition of the collateral was commercially reasonable because the plaintiff and the defendants engaged in negotiations for 18 months, in which the defendants knew that the plaintiff believed that the defendants were in default.

At this time, this Court denies the plaintiff's motion to dismiss the counterclaim for breach of contract and breach of the duty of good faith and fair dealing. This Court does agree with the plaintiffs that if the defendants were in default, the plaintiff had no duty to negotiate with a defaulting party. The plaintiff does attach to its complaint the promissory note and the assignment, which shows that the promissory note is secured by the assignment, which requires the defendants to keep $7 million in the account at issue. However, the plaintiff did not attach all of the loan documents. Taking the alleged facts in the counterclaim as true, there may be some provision in the loan agreement, which also

secures the promissory note, which may show that the defendants were not in default. Because this Court has not seen the loan agreement, it declines to make a finding as to whether the defendants defaulted.

Furthermore, this Court agrees with the defendants that, even if default were proper in this situation, whether the disposition of collateral was commercially reasonable is a question of fact. See W. Va. Code § 46-9-612 (providing that whether a notification is sent within a reasonable time is a question of fact). Accordingly, this Court must deny the plaintiff's motion to dismiss the breach of contract and breach of duty of good faith and fair dealing counterclaim.

B. Tortious Interference with Business Activities

To establish a prima facie case of tortious interference, the defendants must prove the following elements: "(1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." Syl. Pt. 2, Torbett v. Wheeling Dollar Savs. & Trust Co., 314 S.E.2d 166 (W. Va. 1983).

The defendants concede that under West Virginia law, they cannot state a claim against the plaintiff for intentional interference with the loan contract between the plaintiff and the defendants. The defendants state that they allege that defendant Saoud had contractual relationships and/or the expectancy of

8

financial relationships with other financial institutions and that the agent of the plaintiff maliciously caused defendant Saoud to be declared in default of his loan agreement. The defendants acknowledge that they have not suffered any interference with loans they may seek in the future, but that they expect harm when defendant Saoud next applies for a loan. This Court agrees with the plaintiff that the defendants have no claim for tortious interference at this time. Accordingly, this Court grants the plaintiff's motion to dismiss the defendants' counterclaim for tortious interference with business activities.

## V. Conclusion

For the reasons set forth above, the plaintiff's motion to dismiss the defendants' counterclaims is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    May 31, 2011

>                    /s/ Frederick P. Stamp, Jr.
>                    FREDERICK P. STAMP, JR.
>                    UNITED STATES DISTRICT JUDGE